FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 26 2002
JAMES W. McCORMACK,
BY:_____ DE

IN THE EIGTH DISTRICT
UNITED STATES DISTRICT COURT – ARKANSAS EASTERN DISTRICT

CHETTY and UMA SUNKU MAMANDUR        PLAINTIFFS

VS.     NO. 4-02-CV-00455WRW

JIMMY EARL POWER, JR and PRUDENTIAL
SECURITIES, INC.        DEFENDANTS

This case assigned to District Judge _Wilson_
to Magistrate Judge _Young_

## MOTION TO VACATE
## ARBITRATION AWARD – NASD CASE #: 00-05512

Mamandurs, Chetty and Uma Sunku Mamandur, submit the request for a motion to vacate the award to Prudential Securities, Inc., by the Panel of Arbitrators in the hearing of the National Association of Securities Dealers (NASD) Case #: 00-05512.

### PARTIES

1. Mamandurs, Chetty and Uma S Mamandur, have been married to each other and reside at 274 Valley Club Circle in Little Rock, Arkansas. Mamandurs are not represented by a Counsel and are appearing Pro se.

2. Defendants, Prudential Securities, Inc. ("Prudential"), has been, and continues to be, a member of The National Association of Securities Dealers ("NASD"). Prudential operates a branch in Little Rock, Arkansas.

3. Mr. Jimmy Earl Power, Jr (a/k/a Jason Power) was a Financial Advisor on the account at Prudential Securities who has taken a new job with Raymond James Financial Services, Inc. beginning April 2002.

## JURISDICTION

4. Arbitration Panel has awarded the counterclaim by Prudential with interest to date. The award can only be challenged by a motion to vacate in a federal or state court of appropriate jurisdiction pursuant to Federal Arbitration Act, 9 U.S.C. § 10 or settle between the parties.

## CHRONOLOGY OF RELEVANT EVENTS TO DATE

5. On December 29, 1999, Mamandurs opened the joint Command Account (Original account Number 07P-115370) with Prudential after meeting with Prudential's Little Rock Branch Manager, Mr. John R. Turbeville, and a Prudential Financial Advisor, Mr. Kevin Holmes. The account was opened with an initial deposit amount of Fifty-one Thousand dollars ($51,000). From December 29, 1999 to approximately July 1, 2000, Mr. Kevin Holmes served as the Financial Advisor to Mamandurs. Beginning early July 2000, Mr. Jason Powers became Mamandurs' Financial Advisor.

6. On March 1, 2000, Mamandurs and Prudential, through its agent Kevin Holmes, entered into a written agreement authorizing Mamandurs to participate in option trading ("Option Agreement") and margin account. Mamandurs deposited in excess of One Hundred Thirty Thousand Dollars ($130,000.00) in initial deposit and in response to Prudential's margin calls.

7. On October 26, 2000, due to market fluctuations, the account value reached negative equity and Prudential liquidated the account, leaving a negative balance of around $32,900.

8. On or around January 9, 2001, Mamandurs filed a statement of claim against Prudential on two claims: 1) Broker Negligence and 2) Unlawful Liquidation of the account. A copy of the claim is included as Exhibit 1. Prudential filed a response along with a counterclaim for the balance amount, copy of which is included as Exhibit 2.

9. An arbitration hearing, National Association of Securities Dealers (NASD) case #: 00-05512, was held on April 9th and 10th of 2002, in Little Rock, Arkansas.

10. On April 12, 2002, 2 days after the hearing, Mr. Mamandur filed a complaint with Securities Exchange Commission ("SEC") on the issue of improper and inappropriate business practice engaged by Prudential Securities in the trades involving the option assignments and Margin call issues in April 2000. This issue was not covered in the arbitration hearing case #: 00-05512 and this complaint was addressed to the attention of Mr. Clark Smith, Manager, Prudential Securities, Little Rock, Arkansas.

11. Arbitration award was announced on May 16, 2002 that Mamandurs shall pay to Respondent Prudential Securities the sum of $32,899.03 plus interest at the rate of 6% from October 26, 2000 until the date of the payment of the award. A copy of this award is attached as Exhibit 3.

12. On May 20, 2002, Mamandurs submitted a request for mediation hearing on the issues of option assignments and Margin calls of April, 2000. This was submitted to Mr. Clark Smith, Prudential Services, inc. in Little Rock.

13. On May 23, 2002, Mamandurs submitted a letter to Mr. Strangfeld, President and CEO of Prudential Securities, with details on the improper handling of the margin call trades on April 22, 2000 and requested investigation and proposed a mediation settlement of the issues.

14. Defendant's Counsel informed Mamandurs, in a letter dated June 6, 2002 that Prudential was not interested in pursuing either the mediation or further discussion of this matter.

15. Mamandurs filed an application for an arbitration hearing on the issue of the improper practices associated with the margin calculations on April 22, 2000 and requesting relief from associated damages. The application was served to Defendants on June 21, 2002.

16. On July 5, 2002 Mamandurs requested mediating the dispute in light of the pending arbitration case #: 02-03414 and their intent to file a motion to vacate the award on case #: 00-05512 and that Mamandurs will proceed on the filing for the motion to vacate failing to hear from Prudential by July 20th, 2002. Prudential did not respond to this request.

### CLAIM: Fraud by Prudential and/or Biased Decision by Arbitration Panelists

17. Prudential's response to the initial claim on case #:00-05512 (Exhibit 2 – Last Paragraph page 3) indicated that Mr. Power called Uma Mamandur on July 27, 2000 advising of the need to either deposit cash or liquidate the positions to meet the call. Uma Mamandur following his request and recommendation agreed to cover the short position and this resulted in increasing the margin call balance due. The transaction did exactly opposite of what Mr. Power wanted to accomplish by making this call and yet he seemed to have ignored the outcome. Clearly, this was negligence on the part of Mr. Power.

18. During his testimony, Chetty Mamandur presented unauthorized trade by Mr. Jason Power on July 28th, 2000 that resulted in a margin call amount balance due of around $97,000. This item was completely left out in the rest of the hearing. Mr. Power called on July 27th for a margin call balance, completed a trade and the trade actually increased the margin call balance due in the account. Given these facts, this trade on July 28, 2000 should not have been allowed to occur, as it was going to further increase the margin balance due.

19. Prudential directed the Panelists to review all comparable trades in the Mamandurs' joint account with Charles Schwab account. Very clearly, there were no comparable trades on July 28, 2000 in any of the accounts with Charles Schwab & Company. This clearly indicates that the July 28, 2000 trade was an unauthorized trade by Mr. Jason Power. Again, this trade item was not discussed further beyond Chetty Mamandur's testimony when this issue was raised.

20. Oct 26, 2000 account liquidation – Mr. Power's testimony confirmed that he left me a voice message simply asking me to call back and there was no mention of any margin call and the need to deposit cash or liquidate assets. This contradicts their claim that they were giving us time to make a deposit before Noon on October 26th, 2000. This clearly demonstrates that they liquidated the account without notice.

21. Despite the existence of these facts, Arbitrators found the Mamandurs prejudiced and offered relief of $32,890 requested by the Prudential. The Panel has awarded Prudential the amount with interest until the date of the payment.

22. Prudential inundated the Arbitrators with Mamandurs' Charles Schwab accounts and numerous trades and volume of paper associated with those accounts. Prudential dwelled on establishing that Mamandurs were active traders and gamblers, as cited by the quotation in their response to the claims (Exhibit 2, page 5, paragraph 1). Prudential certainly managed to steer the focus away from the plaintiff's claims and shifted it to the counterclaim. Prudential failed to provide any evidence against Plaintiff's claims, such as telephone recordings, and simply referred Arbitrators to compare trades in Mamandurs' Charles Schwab accounts, which were not relevant to this case. Prudential has misled the Arbitrators on the July 27th trade and the outcome

of the trade. This is clearly manipulation and fraud engaged by Prudential in the Arbitration hearings.

23. Mamandurs are descendants from India and are naturalized Citizens of United States of America. They have been residents of U.S.A. since August 1978. The facts do not support the Arbitrators' decisions. The award by Arbitrators against Mamandurs could have been driven by partiality and racial bias against Mamandurs.

## Pending Arbitration NASD case #: 02-03414

24. On April 22, 2000, the account received two Put Option assignments, one involving 200 SDLI shares at $225 and a second assignment of 600 shares at a price of $195 for a total amount of $162,049.90. These trades should have resulted in a Fed Call (also known as RegT call or Initial Margin call) for an amount of $47,112. Prudential reported a margin call of $4,709 and indicated that the call amount was covered by Market appreciation.

25. Investigation showed that Prudential converted this Fed Call to a maintenance call, thus lowering the margin call requirement significantly and covered the margin call with market appreciation. This practice is a violation of the compliance requirements from both the House and exchange requirements perspectives.

26. This practice resulted in significantly increased account assets. This practice also increased the Quarterly fee, which is based on a percentage of the total account assets.

27. This practice is in violation of applicable Federal and state laws, including Rules and Regulations of the Securities and Exchange Commission, the Board of Governors of the Federal

Reserve System, Chicago Board of Exchange Options Requirements and the contract agreement between the parties.

28. Mamandurs have filed a request for arbitration hearing, filed on June 8, 2002, on this issue of Margin calls associated with the April 22, 2000 option assignments. The statements were served to the parties on June 21, 2000.

### Motion to Vacate the Arbitration Award

29. In light of the existence of the facts supporting plaintiff's claims and that the award was either being influenced by the inundated, but unrelated paper work or involving partiality and bias by Arbitrators, Mamandurs request that the arbitration award on the NASD case #: 00-05512 be vacated and request that damages requested by Mamandurs be ordered.

Respectfully submitted,

*Chetty Mamandur* 7/26/02

*Uma Sunku Mamandur* 7/26/02

Chetty Mamandur
and
Uma Sunku Mamandur
274 Valley Club Circle
Little Rock, Arkansas 72212
(501) 224-5553 Home
(870) 541-3941 Work

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Courts's Case File*