FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 19 2002

JAMES W McCORMACK, CLER
By: _____
DEP. CLER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

CHETTY and UMA SUNKU MAMANDUR,     MOVANTS

v.     No. 4-02-CV-00455

JIMMY EARL POWER, JR
and PRUDENTIAL SECURITIES, INC.,     RESPONDENTS

### RESPONDENTS' RESPONSE IN OPPOSITION TO
### MOVANTS' MOTION TO VACATE ARBITRATION AWARD
### AND
### CROSS MOTION AND APPLICATION
### TO CONFIRM ARBITRATION AWARD

Respondents Prudential Securities Incorporated ("Prudential") and Jimmy Earl Power, Jr. ("Mr. Power") (collectively "Respondents") submit this Response in Opposition to the Motion to Vacate Arbitration Award (the "Motion to Vacate") filed by Chetty and Uma S. Mamandur (hereinafter the "Mamandurs") in this action. By this pleading, Respondents also apply, pursuant to § 9 of the Federal Arbitration Act (9 U.S.C. § 9 (1999)), for a Judgment confirming the Arbitration Award (the "Award"), dated May 16, 2002, attached hereto as Exhibit 1. The Mamandurs' Motion to Vacate should be denied and a Judgment entered confirming the Arbitration Award.

### I. PRELIMINARY STATEMENT

The Mamandurs are married to each other and are residents of Little Rock, Arkansas. The Mamandurs suffered trading losses as a result of their own investment decisions and later initiated an arbitration proceeding in the arbitration forum administered by the National Association of Securities Dealers Regulation, Inc. ("NASDR") (the "arbitration") in an effort to

recover those trading losses from Prudential, the brokerage firm where they maintained their account and Mr. Jimmy Earl Power, the Prudential financial advisor assigned to their account.

Now, having had their claims in the arbitration proceeding dismissed and an arbitration award granted against them in a unanimous decision by the Arbitration panel, the Mamandurs submit their Motion to Vacate, consisting of nothing more than an attempt to reargue the claims properly rejected by the Arbitration panel. Moreover, the Mamandurs have filed yet another arbitration against Prudential and Mr. Power based upon the same activity in their account.

The Mamandurs' Motion to Vacate patently fails to present any evidence sufficient to carry the heavy burden required for vacatur of an arbitration award.

## II.  STATEMENT OF FACTS

The dispute submitted to the NASDR arbitration panel was the subject of a full hearing before a panel of three arbitrators. A summary of the parties' contentions, as presented to the arbitration panel, may be found in the Mamandurs' Statement of Claim and Respondents' Answer and Counterclaim. The Mamandurs' Statement of Claim is attached as Exhibit B to the Mamandurs' Brief and Respondents' Answer and Counterclaim is attached hereto as Exhibit 2 for the Court's convenience. The parties' respective positions in the arbitration are summarized herein below.

The Mamandurs asserted that Respondents negligently recommended and executed certain securities transactions for their brokerage account. The Mamandurs also contended that Respondents wrongfully liquidated the securities held in the account without affording the Mamandurs an opportunity to deposit funds sufficient to cover margin calls on the account. The Mamandurs claimed that Respondents' actions resulted in losses sustained by them in the aggregate amount of $296,800.00.

Respondents denied the Mamandurs' allegations of negligence and wrongful liquidation, pointing out that when the Mamandurs opened their brokerage account with Prudential in December 1999, they represented that their primary account objective was speculation and that their risk tolerance was aggressive. The Mamandurs also signed a Command Account Margin Agreement, which allowed Respondents' discretion to liquidate the Mamandurs' account without notice upon the occurrence of certain events, including insufficient margin. Prudential had the ability, in its sole discretion, to establish the levels of required margin.

The Mamandurs also opened an options trading account and represented to Respondents that they had traded options for 20 years and by signing the option agreement, represented that they understood that options transactions represented a high degree of risk and that the investment offered no guarantee of gain or assurance against loss. The Mamandurs traded their account in an aggressive manner and made their own investment decisions and trades. Their account activity was not based on Respondents' recommendations.

Throughout the period from March to October 26, 2000, the Mamandurs' account incurred many margin calls as the combined value of the cash and securities held in the account declined, which required the Mamandurs to either deposit additional cash and/or securities into the account or liquidate positions held in the account. During October 2000, the Mamandurs' account incurred numerous margin calls. While Mr. Power attempted to reach the Mamandurs by telephone, he never received a return call. By the time the market opened on October 26, 2001, the account was in a severe margin call situation and the Mamandurs' equity in the account was completely wiped out, with an unsecured debit balance of over $30,000.00. Respondents immediately advised the Mamandurs of this situation. After the Mamandurs failed to deposit additional funds into the account, Respondents closed out open options positions and

liquidated the stocks held in the account. After the liquidation, the account had a negative balance of $32,889.93. To date, the Mamandurs have never resolved the unsecured debit balance and it remains due and owing to Prudential.

An arbitration hearing was conducted in accordance with the NASD Code of Arbitration Procedure. Following the hearing, the Arbitration Panel, in a unanimous decision, found in favor of Respondents, dismissing the Mamandurs' claims with prejudice, and awarding Respondent Prudential $32,899.03 in compensatory damages. *See* Ex. 1, Award at p. 2. It is this Award that the Mamandurs now seek to have vacated.

### III.   ARGUMENT AD CITATION OF AUTHORITY

#### A.   Applicability of the Federal Arbitration Act to this Matter.

The Mamandurs commenced the arbitration against Respondents pursuant to a contract evidencing a "transaction in commerce" under the Federal Arbitration Act (the "FAA"). 9 U.S.C. § 2 (1999). While the Mamandurs' Statement of Claim in the underlying arbitration failed to specifically identify the jurisdictional bases for such proceeding, NASDR's jurisdiction over such claims must have been based either on the Mamandurs' agreement with Respondents, NASDR rules governing Respondents' conduct as a member of the National Association of Securities Dealers ("NASD"), or the Submission Agreements of the parties themselves.

Notwithstanding the absence of any pre-dispute arbitration agreement, Rule 10101 (c) of the NASD Code of Arbitration requires member firms to arbitrate customer disputes, if the customer so chooses. The rule apples to all NASD member firms. Rule 10101 (c) creates an implied agreement to arbitrate between the Mamandurs and Respondents. Such agreement involves transactions in commerce because Respondents utilized the means and instrumentalities of interstate commerce, including the mails, interstate telephone communications and the

facilities of national securities exchanges, including, but not limited to, the Chicago Board Options Exchange ("CBOE") for the execution of the Mamandurs' orders. The CBOE is an exchange within the meaning of Section 15(a)(1) of the Securities and Exchange Act of 1934. "[T]ransactions involving purchase and sale of securities on national exchanges involve commerce within the meaning of the Federal Arbitration Act." *Paine, Webber, Jackson & Curtis, Inc. v. W.W. McNeal*, 143 Ga. App. 579, 580, 239 S.E.2d 401, 403 (1977). As any transactions between Respondent Prudential (a Delaware corporation with its principal place of business in New York), and the Mamandurs (residents of Arkansas) are interstate in nature, they further serve to bring this matter within the FAA.

The Submission Agreement executed by the parties, submitting their disputes to arbitration before the NASDR also involve transactions in commerce under the FAA. 9 U.S.C. § 2 (1999). The NASDR Office of Dispute Resolution assigned to administer the arbitration is, and was at the time of the arbitration, located in Boca Raton, Florida. Communications between NASDR, the parties and the arbitrators selected to hear this case, were carried out by means of the U.S. mails or interstate, telephonic communications. These interstate activities also act to bring the Mamandurs' Motion to Vacate and this, Respondents' Response in Opposition and Motion to Confirm, within the FAA.

The FAA "creates a body of federal substantive law" which governs arbitration agreements covered by its terms. *Moses H. Cone Memorial Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32, 103 S.Ct. 927, 942 (1983). State law governing arbitration must yield to the Federal Arbitration Act if the arbitration agreement comes within the Act, as it does here. The FAA establishes an "emphatic" national policy "in favor of arbitral dispute resolution" which is binding on all courts, State and Federal. *Moses H. Cone, supra.*

**B.      The Award Rendered by the Arbitrators Should not be Vacated.**

The authority of a federal court to vacate an arbitration award pursuant to the FAA is very narrow. *See, e.g., First Options v. Kaplan*, 514 U.S. 938, 942; 115 S.Ct. 1920, 1923; 131 L. Ed. 2d 985, 992 (1995) (explaining that where the district court faces the decision of an arbitration panel, "the court will set that decision aside only in very unusual circumstances"); Indeed, the Eighth Circuit has held that "judicial review of arbitration award is extremely limited." *Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588 (8th Cir. 1998).

Because of the need for proper deference to alternative means of dispute resolution, the Court can overturn an arbitration award that is challenged only if it is contrary to a "well-defined and dominant" policy embodied in laws and judicial precedent. *Painewebber, Incorporated v. Agron*, 49 F.3d 347, 350 (8th Cir. 1995). The Court is not entitled to merely substitute its judgment for that of the arbitration panel, no matter how wrong the Court may believe the panel's decision to be. *Id.* The "strong federal policy in favor of voluntary commercial arbitration would be undermined if the courts had the final say on the merits of the award." *Revere Copper & Brass Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 84 (D.C. Cir. 1980.)

Arbitrators are permitted to determine the materiality and relevance of any evidence that is proffered, and are not bound by any formal rules governing the admissibility of evidence. Moreover, absent exceptional circumstances, a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties." *Swink & Company, Inc. v. Norris & Hirshberg, Inc.*, 845 F.2d 789 (8th Cir. 1988).

Section 10 of the FAA sets forth the exclusive statutory grounds for vacating an arbitration award. It permits vacatur only upon a demonstration of one of the following grounds:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made.

9 U.S.C. § 10(a). Although the Mamandurs' Motion to Vacate does not specifically reference any of the grounds for vacation set forth in Section 10 of the FAA, a liberal interpretation of their allegations would suggest that statutory grounds upon which the motion is based are limited to showing "fraud" and "evident partiality." *See* Motion to Vacate, p. 6, ¶ 22-23.

In addition to the statutory grounds set forth in the FAA, the Eighth Circuit has recognized that an award may be vacated "where it is completely irrational or evidences a manifest disregard for the law." *Hoffman v. Cargill Incorporated*, 236 F.3d 458 (8th Cir. 2001). An arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it. *Stroh Container Co. v. Delphi Indus.*, 783 F.2d 743, 749-50 (8th Cir. 1986). The Motion to Vacate does not appear to be based upon an argument touching upon this potential basis for vacatur. While the Mamandurs certainly disagree with the award , they have not identified any facts indicating that it was irrational, nor have they identified any legal authority that was disregarded by the panel.

As discussed in greater detail below, the Mamandurs have utterly failed to carry their burden of showing that the arbitration award against them was the result of manipulation and fraud so as to warrant vacatur of the Award. The Mamandurs have also failed to offer any demonstrable evidence supporting their claim of "partiality or "racial bias" by the arbitrators.

Rather, the Mamandurs merely seek to reargue the merits of their claims and take exception with the Arbitration panelists' interpretation of evidence presented at the hearing. The arguments advanced in the Motion to Vacate do not even begin to approach any of the statutory grounds set forth under § 10(a) of the FAA or the non-statutory grounds recognized by the courts in the Eighth Circuit. The Mamandurs' asserted grounds of "fraud" and "partiality" are a thinly veiled attempt to get a "second bite of the apple" in hopes of a different outcome. Accordingly, the Mamandurs' Motion to Vacate should be denied.

### 1. *The Mamandurs Have Failed to Demonstrate that the Arbitrators' Decision was Irrational or that it Manifested Disregard for the Law.*

In the face of the strong presumption in favor of confirmation of arbitration awards, the Courts place "the onus upon the party requesting the vacatur to refute...every rational basis upon which the arbitrator could have relied." *See e.g., Robbins v. Day*, 954 F.2d 679, 684 (11th Cir. 1992). The Mamandurs' feeble assertions fail to meet this burden, compelling confirmation of the arbitrators' award pursuant to 9 U.S.C. § 9. *Mandich v. Watters*, 970 F.2d 462 (8th Cir. 1992)(applying the "rational basis" standard while reserving judgment as to its propriety, the district court declined to vacate the arbitration award.)

Following a full hearing where the Panel heard testimony by both Mr. and Ms. Mamandur, Prudential representatives, and other witnesses, the Panel unanimously decided the case against the Mamandurs. Clearly, the arbitrators determined that the evidence at the hearing supported a finding that Respondents were not negligent, did not wrongfully liquidate the account of the Mamandurs, and that the Mamandurs were liable for the negative balance of their account. Since the Mamandurs have not overcome the presumption that the arbitrators relied on a rational basis in rendering their award, the Motion to Vacate should be denied.

### 2.     *The Mamandurs Have Failed to Prove that the Award was Procured by Corruption, Fraud, or Undue Means.*

The Mamandurs suggest that the Arbitrators' decision was procured by "fraud and manipulation" on behalf of Prudential. *See* Motion to Vacate, p. 6, ¶ 22. As explained above, the FAA contains a provision for the vacatur of an arbitration award on the basis of "corruption, fraud, or undue means." *See* 9 U.S.C. § 10 (a). In reviewing arbitration awards, courts have relied upon a three-part test to determine whether an arbitration award should be vacated for fraud. "First, the movant must establish fraud by clear and convincing evidence. Second, the fraud must not have been discoverable upon exercise of due diligence prior to or during arbitration. Third, the movant must demonstrate that fraud materially related to issue in arbitration." *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988). The Eighth Circuit has recognized that a "party seeking vacation of an award on the grounds of fraud must also demonstrate that the conduct influenced the outcome of the arbitration." *Delta Mine Holding Company v. AFC Coal Properties*, 280 F.3d 815 (8th Cir. 2001). In other words, there must be some causal relation between the alleged fraudulent conduct and the arbitration award. Other Circuits have uniformly construed the term "fraud" as requiring proof of intentional misconduct. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992).

In this instant case, the Mamandurs' self-serving conclusion that the arbitrators based their decision upon fraud and manipulation rests solely on their own characterization of their claims as meritorious, well documented, and supported by the law and the factual evidence. The Mamandurs' disappointment, however deep, that the Arbitration Panel took a dimmer view of the merits of their claims does not amount to "fraud or manipulation." The Mamandurs have failed to prove that the arbitrators based their decision on fraud and their Motion to Vacate should be denied.

### 3. *The Mamandurs Have Failed to Prove that the Arbitrators Were Evidently Partial*

Section 10 of the FAA permits vacatur "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). To establish partiality, the party seeking vacatur has the burden to demonstrate "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Montez v. Prudential Securities, Inc.*, 260 F.3d 980 (8th Cir. 2001)(citing *Consolidation Coal Co. v. Local 1643, United Mine Workers*, 48 F.3d 125, 128 (4th Cir. 1995)). The assertion of partiality, however, must be "certain and direct, and not remote, uncertain or speculative." *Id.* More specifically, "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli Money Purchase Plan and Trust v. ADM Investor Services, Inc.*, 46 F.3d 1309, 1311 (11th Cir. 1998).

In this instant case, the Mamandurs fall well short of establishing "partiality" as that term is defined by the FAA. The Mamandurs do not (and indeed cannot) demonstrate any "certain and direct" evidence of partiality. The Mamandurs' theory of "partiality" is a creature of their imagination. By negative implication, the Mamandurs submit that they are "descendants from India and are naturalized Citizens of the United States" and that "the award by Arbitrators against them *could have been* driven by partiality and racial bias." *See* Motion to Vacate, p. 6, ¶ 23. (emphasis added). The Mamandurs' claim of partiality amounts to one sentence implicating that the arbitrators are partial based on the Mamandurs' Indian descent. This claim amounts to nothing more than a vague, remote, and speculative charge that the courts have held cannot support an order to vacate an arbitration. *See e.g. Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157 (8th Cir. 1995).

## IV.     CONCLUSION

For the foregoing reasons, Prudential Securities Incorporated and Jimmy Earl Power, Jr. respectfully request that the Mamandurs' Motion to vacate be denied.

### RESPONDENTS' APPLICATION TO CONFIRM ARBITRATION AWARD

Respondents Prudential Securities Incorporated ("Prudential") and Jimmy Earl Power, Jr (collectively "Applicants") apply, pursuant to the provisions of § 9 of the Federal Arbitration Act (9 U.S.C. § 9 (1999)) (the "FAA"), for a Judgment confirming the Award entered in their favor by a panel of three arbitrators sitting in Little Rock, Arkansas following a hearing on the matter. In accordance with that Award, Applicants request that the Court enter a Judgment confirming the Award in favor of Applicants, dismissing the claims of the Mamandurs in their entirety and awarding separate Applicant Prudential, compensatory damages of $32,899.03 plus interest.

This Court has jurisdiction of this action pursuant to the provisions of 9 U.S.C. § 9 and 28 U.S.C. §1331 in that the Court has personal jurisdiction over both the Applicants and the Mamandurs.  Separate Applicant Prudential is a corporation organized under the laws of Delaware with its principal place of business in the State of New York.  Prudential conducts business within the State of Arkansas.  The Mamandurs are citizens of the State of Arkansas.

In accordance with the provisions of § 13 of the FAA, the arbitration Award sought to be confirmed is attached hereto as Exhibit 1 and Respondents' agreement to arbitrate is attached hereto collectively as Exhibit 3.

The grounds for this Application are that the Award was made in an arbitration proceeding governed by the FAA in this judicial district and this application is made within one year from the date of the Award. In accordance with the FAA, Applicant seeks a judgment confirming the arbitration Award in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

The confirmation of an arbitration award is a narrowly limited judicial procedure. *Painewebber, Incorporated v. Agron*, 49 F.3d 347, 350 (8th Cir. 1995). It is a summary proceeding that converts a final arbitration award into a judgment of the court. *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2nd Cir. 1987); *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986).

Section 9 of the FAA states that a "judgment of the court shall be entered upon the award pursuant to the arbitration." 9 U.S.C. § 9. The arbitration agreement (attached hereto as Exhibit 3) executed by the parties specifically state that: (i)the arbitration will be governed by, among other things, the NASD Arbitration Rules ("NASD Rules"); (ii) that they "agree to abide by and perform any award(s)"; and (iii) that "a judgment…may be entered upon such award(s)." Thus, Respondents agreed that the Award may be confirmed by a court and a Judgment entered.

## CONCLUSION TO THE APPLICATION
## TO CONFIRM THE ARBITRATION AWARD

For the reasons set forth above, the Mamandurs are not entitled to have the arbitration Award entered against them vacated and Prudential Securities Incorporated and Jimmy Earl Power, Jr. respectfully request that a Judgment be entered by this Court CONFIRMING the Award in its entirety, adjudging that all claims asserted by Chetty and Uma Sunku Mamandur against the Respondents are dismissed in their entirety and further adjudging that Prudential is entitled to recover from the Mamandurs a judgment in the amount set forth in the award.

Respectfully submitted,

KUTAK ROCK LLP

By: *Robert George*
Robert George, AR #98134
The Three Sisters Building
214 West Dickson Street
Fayetteville, Arkansas 72701-5221
(479) 973-4200 Telephone
(479) 973-0007 Facsimile

Attorneys for Respondents
Prudential Securities Incorporated
and Jimmy Earl Power, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within and foregoing Respondents' Response in Opposition to Movant's Motion to Vacate Arbitration Award and Cross Motion and Application to Confirm Arbitration Award was served via first class, U.S. Mail on this 16th day of August, 2002 to:

Chetty and Uma Sunku Mamandur
274 Valley Club Circle
Little Rock, Arkansas 72212

*Robert George*
Robert W. George

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Courts's Case File*